IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PAUL CASANAS,

    Petitioner,

  v.

JAMES A. YATES,

    Respondent.
                                     /

No. 08-02991 CW

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING CERTIFICATE OF APPEALABILITY ON TWO CLAIMS

    On June 17, 2008, Petitioner Paul Casanas, a state prisoner incarcerated at Pleasant Valley State Prison, filed a petition for a writ of habeas corpus alleging three claims based on allegations that the trial court improperly questioned and dismissed Juror Number Three, insufficiently investigated Juror Number Five's alleged misconduct and improperly imposed the upper term sentence. Respondent filed an answer and Petitioner has filed a traverse. Having read all the papers filed by the parties, the Court DENIES the petition. The Court grants a certificate of appealability on two of Petitioner's claims.

BACKGROUND

    The following facts are taken from the state appellate court opinion. On April 16, 2005, Petitioner was taken to a hospital after being stabbed in his buttocks. At the hospital, Officer Brian Franco seized Petitioner's pants as evidence in the stabbing

investigation.  Officer Branco found a glass pipe with white residue inside one of the pants' pockets.  In another pocket, Officer Branco found a second glass pipe, two plastic baggies of marijuana, and nine smaller baggies of methamphetamine.  After Petitioner was treated for his stab wound, Officer Branco transported him to the police department where he was interviewed by Detective David Parris.  Petitioner told Detective Parris that he lived in a motel room with his sixteen-year old girlfriend, Kimberly H.

The police interviewed Kimberly, who said she was sixteen years old, had been using methamphetamine every day and had been having sexual relations with Petitioner.  At trial, she testified that she had told Petitioner that she was eighteen years old and had sex with Petitioner only once.  She testified that she had become addicted to methamphetamine before she met Petitioner and, while with Petitioner, she took the drug from him without asking.  She testified that Petitioner gave her the drug directly on only one occasion.

On April 20, 2005, Detective Parris again interviewed Petitioner.  Petitioner told him that Kimberly had originally told him she was eighteen or nineteen years old, he was in love with her and he wanted to marry her.  He admitted that he had sexual intercourse with Kimberly and that she received methamphetamine from him.

At trial, sixteen-year old Tary Porter testified that she observed Kimberly smoking a white substance from a glass pipe while Petitioner was present.  Petitioner presented no defense.  The

2

court granted his motion to dismiss one of the counts of furnishing a controlled substance to a minor.  On September 13, 2005, the jury convicted Petitioner of three counts of furnishing a minor with a controlled substance and two counts of unlawful intercourse with a minor.

On December 7, 2005, the trial court sentenced Petitioner to nine years and eight months in state prison.  In imposing the upper term, the trial court found the following aggravating factors: Petitioner induced others to participate in the commission of the crime or occupied a position of leadership or dominance of other participants in its commission; Petitioner induced a minor to commit or assist in the commission of the crime; the manner in which Petitioner carried out the crime indicated planning, sophistication, or professionalism; Petitioner's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings were numerous or of increasing seriousness; Petitioner had served a prior prison term; and Petitioner's prior performance on probation or parole was unsatisfactory.  The court noted that Petitioner had prior felony convictions for robbery and burglary. The court found one mitigating factor: the victim was a willing participant.

On July 13, 2006, Petitioner appealed his conviction to the California court of appeal.  On August 30, 2007, the state appellate court affirmed the judgment of conviction.  On October 5, 2007, Petitioner filed a petition for review in the California Supreme Court, which was denied on December 12, 2007.  Petitioner timely filed this federal habeas petition.

3

LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result. Clark v. Murphy, 331 F.3d 1062, 1067 (9th. Cir. 2003).

Even if the state court's ruling is contrary to or an unreasonable application of Supreme Court precedent, that error justifies habeas relief only if it resulted in "actual prejudice," that is, that the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993).

The only definitive source of clearly established federal law

4

under 28 U.S.C. § 2254(d) is the holdings of the Supreme Court as of the time of the relevant state court decision. <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).

To determine whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established law, a federal court looks to the decision of the highest state court that addressed the merits of a petitioner's claim in a reasoned decision. <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.7 (9th Cir. 2000). In the present case, the appellate court is the only state court to address the merits of Petitioner's claims.

DISCUSSION

I. Juror Number Three

Petitioner contends that the trial court violated his Sixth Amendment right to a fair and impartial jury by questioning Juror Number Three during deliberations and then dismissing him. He also argues that the jury foreperson wanted Juror Number Three removed because he was the only juror to vote for acquittal.

A. State Appellate Court Opinion

The state appellate court summarized the facts regarding this claim as follows:

> The jury adjourned for deliberations late Thursday morning, September 8, 2005. On Monday morning, September 12, 2005, the jury foreperson reported to the court that Juror No. 3 had admitted to having discussed the case with an outside party. The prosecutor, defendant and defendant's counsel were all present. The judge asked the foreperson to elaborate, and he explained: "In the process of our deliberating about the counts for--I believe it's two, three, and four, sex with an under-age individual, the--one of the jury members stated that this weekend he had a discussion about a buddy of his. And in the process of relating his thought to us about the charges, he said that his buddy said, 'Well, remember

5

when you were seeing Becky?  You've got to think of it that way.' [¶] And in that case, he stated that the jury member was 22 and the--Becky was 17, which means that-- which implied to me that he had, in some ways, revealed some of the details of the case and was using external sources to figure out what was going on and reach a conclusion."

The jury foreperson believed that all of the jurors had heard the comments of Juror No. 3, and one of the jurors had asked the foreperson if he had heard the comments. The foreperson's impression was that Juror No. 3 "was still wrestling with it and attempting to remain fair and impartial in terms of deliberating the facts of the case before him."  After Juror No. 3 made these comments, the jurors continued to deliberate.

When questioned by defense counsel, the jury foreperson stated that he inferred that Juror No. 3 "had to reveal some of the details of the case [to his friend] for that comment to be brought forth."

In the presence of both defense counsel and the prosecutor, the trial judge called Juror No. 3 into the courtroom.  The court told the juror that "there's some reference to you[r] hav[ing] commented that you spoke to a friend this weekend about this case or about the circumstances of this case."  The judge then asked juror No. 3 to comment on this.  Juror No. 3 responded: "No. I just said that--that--I told jurors that I--somebody had brought to my attention the fact that I--that I--you know, when I was--way back when, I believe, 22, I took a girl to a prom.  And she was five years lesser than me."

Juror No. 3 stated that the subject came up, not in the context of discussing the pending case, but while discussing a 26-year-old former classmate who recently married a 53-year-old man.  According to Juror No. 3, the subject was age difference, not the pending case.  He asserted that there was no discussion whatsoever about the pending case.

The judge asked Juror No. 3 why he had not revealed the information about dating a female under the age of 18 years during jury voir dire when he was asked whether he or anyone close to him "had ever had any experience with a similar type event or offense."  Juror No. 3 responded, "Well, I just didn't really think that might--my experience--I mean, I never--for one, I forgot about it. But I just, you know, until now, I--I mean, I had forgotten that it would fall into any type of classification that was asked of me at that time."

6

. . .

When asked by the prosecutor whether he could separate out his own personal feelings and just follow the law, Juror No. 3 answered: "Yes, ma'am.  I--I was just--I was just in shock when--personally, when it had--you know, when it dawned on me that I was in a similar situation.  And--and I just--I didn't know it at the time.  I mean, I didn't remember it until it was enlightened to me.  And I just know I was really shocked--[.]"

The judge stated, "under the circumstances," he would have to excuse Juror No. 3 because it appeared "that he brought up something personal that is a factor for him in evaluating the facts of this particular case."  The judge continued: "He obviously has discussed this.  It's a-- real factor for him as far as making his determination.  It's a fact that's outside the--purview of what either side is able to question about or present other evidence."

Defense counsel responded that Juror No. 3 "perhaps did not discuss the case outside of the--jury deliberations.  It appears that the issue arose, you know, from some other collateral source."

The judge decided to excuse Juror No. 3 over defense counsel's objection.

. . . .

After instructing the jury to decide all factual issues based on the evidence presented during the trial and not from any outside source, the court explained: "And I suppose, just to be more direct about it, it came to our attention that potentially one of the other jurors had talked to someone outside of court and maybe not discussed necessarily the facts of this case but own experiences and brought those into the jury deliberation room. [¶] What we have to do is make sure that you make your decision only on the facts presented here in court. [¶] Anyone have a difficulty setting--setting aside anything that you might have heard earlier relative to something happening outside of court and making your decision only on the facts presented here in open court?  Any difficulty with that?  [¶]  Okay.  No one's raising their hand."

The judge then told the jury that it would have to disregard all past deliberations and begin deliberating anew.

. . .

7

[T]he jury with the alternate juror deliberated for about two and one-quarter hours.  The jury returned verdicts convicting defendant of two counts of unlawful intercourse with a minor, and three counts of furnishing a controlled substance to a minor.

. . .

On October 27, 2005, defendant moved for a new trial and requested that the court investigate misconduct allegations.  Defendant attached to his motion the declaration of the dismissed juror, Juror No. 3.  Juror No. 3 stated that, while he was a member of the jury, there were approximately six to seven open votes taken regarding the guilt or innocence of defendant on the various counts.  He asserted that he "was the sole juror who was not persuaded that the case had been proven beyond a reasonable doubt as to each count." . . . He further declared that he believed the report of his alleged misconduct "was motivated by a desire to force" him off the jury as he was "seen as an obstacle to a quick verdict." . . .

When explaining the reason for denying the motion for a new trial, the trial court stated that it did not find the denial of Juror No. 3 that he did not discuss the case outside the jury room as "particularly convincing." The court stated that it did not find that particular misconduct sufficient, in itself, to excuse him.  More significantly, the court found that Juror No. 3 "by the nature of the discussion which he candidly admitted that he was considering his own position having committed a crime in assessing the facts of this case.  In other words, assessing in essence the morality or propriety of a charge in which one could be charged with having sex with an under-aged female and using his own experience in that respect. [¶] Frankly, this is not anything for the jury's consideration whatsoever. [¶] What the jury's duty is to--duty to accomplish is to assess the facts that are presented and determine whether the facts are true or not true, not the propriety of the law in that respect."

The court elaborated: "That was the reason in combination with what I found to be somewhat suspect denial or of his explanation as to why he would be discussing that particular aspect with a friend over the weekend.  I didn't find that particularly convincing.  But more specifically, the fact he was discussing something which would be inappropriate for him to consider in this particular case, and in combination with the fact that he did not disclose that to the court upon direct inquiry on voir dire-and I suppose people forget those sorts of things.  I think excusing [Juror No. 3] was appropriate

8

>     under those circumstances and with the inquiry that had been received."

Resp's. Ex. 6, <u>People v. Casanas</u>, No. A 112452 (2007) at 3-9.

The state appellate court noted that, under California law, it is misconduct for a juror to express opinions based on personal experience that differ from the law as instructed by the court. The appellate court found that the trial court made a proper, limited inquiry of Juror Number Three, without delving into his thought processes or the content of the jury deliberations. Based upon Juror Number Three's responses to the trial court's inquiry, the appellate court found that Juror Number Three was considering whether a sexual relationship between an underage female and an adult male should be against the law. Because Juror Number Three was concerned with whether the charges against Petitioner were proper, the appellate court concluded that he could not be an impartial juror. The appellate court also noted that, although later Juror Number Three submitted a declaration to the trial court that he had been a holdout juror, at the time the trial court made its inquiry of him, the trial court had not known that the jury had been deadlocked or that Juror Number Three was a holdout juror and, therefore, there was no reason for the trial court to have made further inquiry of the jurors.

B. Analysis

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. U.S. Const. amend. VI; <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961). A Sixth Amendment claim may be made on the ground that a particular juror

9

was substituted without good cause. Perez v. Marshall, 119 F.3d 1422, 1426 (9th Cir. 1997). Good cause for removal of a juror may exist where the facts show that the juror was biased. Coughlin v. Tailhook Ass'n, 112 F.3d 1052, 1062 (9th Cir. 1997). Juror bias may be actual or implied. Sanders v. Lamarque, 357 F.3d 943, 948 (9th Cir. 2004). Implied bias is found where "an average person in the position of the juror in the controversy would be prejudiced. Prejudice will be presumed under circumstances in which the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." Id. (internal quotations omitted). Juror bias may be presumed or inferred where a juror has personally been involved in a situation similar to the defendant's. Coughlin, 112 F.3d at 1062; Estrada v. Scribner, 512 F.3d 1227, 1240 (9th Cir. 2008).

Here, the trial court noted that, although Juror Number Three denied discussing the pending case with a friend, he confirmed that he had mentioned dating an underage female to the jury and that he did so because he was surprised that his conduct could constitute the same offense as the defendant's. The trial court reasonably doubted whether the subject of Juror Number Three's dating situation came up in his conversation with his friend without reference to the pending case. The court also reasonably found that Juror Number Three mentioned his experience to the jury, not to help with the determination of facts, but to question whether a sexual relationship between an adult male and an underage female should be unlawful. As noted by the appellate court, Juror Number

10

Three's response to the trial court's question as to why he told the other jurors about his dating an underage girl made it clear that he realized that he could have been charged with the same offense as Petitioner.

Citing Grotemeyer v. Hickman, 393 F.3d 871, 878-79 (9th Cir. 2004), Petitioner argues that Juror Number Three was merely bringing his life experiences to assist the jury in its deliberations. Grotomeyer is distinguishable. In that case, the jury foreperson, based on her experience as a medical doctor, stated that the defendant's mental disorders caused him to commit the crime. Id. at 878. The Ninth Circuit held that this was not misconduct because a juror could bring his or her life experience to bear on the evidence. Id. In contrast, Juror Number Three related his personal experience in regard to the legitimacy of the charges against Petitioner, not to the evidence. The appellate court reasonably found that Juror Number Three was applying his experience to question the law, not using his experience to determine the facts.

At the time the trial court dismissed Juror Number Three, the court was not aware that he was a holdout juror or that the jury was deadlocked. Evidence to that effect was submitted to the court in support of Petitioner's motion for a new trial. Removing a juror for good cause may be proper even if the trial court knows that the excused juror was the sole holdout for acquittal. See Perez, 119 F.3d at 1427 (dismissal of holdout juror permissible because juror's emotional instability that made her unable to continue deliberating provided good cause for her dismissal). The

11

1  court may not remove a juror during deliberations if the request
2  for discharge stems from the juror's doubts about the sufficiency
3  of the government's evidence, <u>id.</u> at 1428, but such was not the
4  case here.

5  The hearing that the trial court held, with the parties in
6  attendance, upon learning from the jury foreperson that Juror
7  Number Three might have discussed the case with an outside party,
8  was not an improper procedure.

9  The appellate court was not unreasonable in concluding that
10 the trial court correctly found that Juror Number Three was not
11 unbiased and impartial.

II.  Juror Number Five

Petitioner contends that the trial court violated his Sixth Amendment right to a fair and impartial jury by failing to hold a post-trial evidentiary hearing based on Juror Number Three's declaration that Juror Number Five had engaged in misconduct during deliberations.

A. State Appellate Court Opinion

The state appellate court summarized the facts regarding this claim as follows:

> Defendant attached the declaration of Juror No. 3 to his motion for a new trial, and Juror No. 3 asserted that Juror No. 5 reported that he had seen Kimberly "previously on Second Street in Eureka in an area where the 'hookers are.'" He further declared that this statement by Juror No. 5 was made during deliberations with all the other jurors present.
>
> On November 30, 2005, the trial court held a hearing on the motion for a new trial and considered the declaration of Juror No. 3.  The court found that it did not have "anything here that would suggest" that it "should inquire further into the deliberations of the jurors."

12

> The court stated that the declaration by Juror No. 3 did not suggest that anything said by Juror No. 5 affected the verdict. It therefore denied the motion for a new trial and declined to hold an evidentiary hearing.

Resp.'s Ex. 6 at 18.

B. Analysis

The appellate court concluded that, when presented with an allegation of juror misconduct involving extrajudicial information, it is the court's obligation to examine the information and then to determine whether this information was likely to have influenced the juror. An evidentiary hearing is not required for every allegation of juror misconduct; in determining whether to hold an evidentiary hearing, the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias and the credibility of the source. Tracey v. Palmateer, 341 F.3d 1037, 1044 (9th Cir. 2003).

The appellate court reviewed Kimberly's testimony and reasonably concluded that the extrajudicial information that she might be a prostitute would not have created juror bias against Petitioner. The appellate court noted that, because Kimberly was a witness for the prosecution, derogatory information about her might have been helpful to the defense. On the other hand, to the extent that her testimony was helpful to the defense, derogatory information about her could be helpful to the prosecution. Therefore, the appellate court concluded that derogatory information about Kimberly would not produce bias in favor of either the defense or the prosecution. The appellate court also reasonably found that any potential bias or influence of

13

extrajudicial information was cured by the trial court's repeated instruction to the jurors to base their decision solely on the evidence presented at trial and not on any outside information.

Even if the court did err, the strong evidence presented by the prosecution, including Petitioner's admission that he had sexual intercourse with Kimberly and that he had given her methamphetamine, Kimberly's corroborating testimony that she had sexual intercourse with Petitioner and that he had given her methamphetamine on one occasion, and Tary Porter's testimony that she had seen Kimberly smoke a substance that looked like methamphetamine while Petitioner was present, ensured that any misconduct by Juror Number Five had no "substantial and injurious effect or influence in determining the jury's verdict." See Brecht, 507 U.S. at 638.

Therefore, the appellate court's denial of this claim was not contrary to or an unreasonable application of Supreme Court authority or an unreasonable determination of the facts in light of the evidence before the state court. This claim for habeas relief is denied.

III. Blakely Violation

Petitioner contends that the trial court violated his Sixth Amendment rights under Blakely v Washington, 542 U.S. 296 (2004), and Cunningham v. California, 549 U.S. 270 (2007), by imposing an upper term sentence based on aggravating factors that were not found by a jury beyond a reasonable doubt.

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory

14

maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 488-90 (2000). The "statutory maximum" for Apprendi purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather is the maximum he or she could impose without any additional findings. Blakely, 542 U.S. at 303-04. In Cunningham, the Court concluded that the middle term specified in California's statutes, not the upper term, was the relevant statutory maximum; therefore, California's determinate sentencing law violated the Sixth Amendment because it authorized the judge, not the jury, to find the facts permitting an upper term sentence. Cunningham, 549 U.S. at 293. However, the trial court's selection of an enhanced sentence based on the defendant's prior conviction does not violate the Sixth Amendment. Id. at 288-89 (citing Almendarez-Torres v. United States, 523 U.S. 224, 239-47 (1998) and Apprendi 530 U.S. at 490). Because, under California law, only one aggravating factor is necessary to set the upper term as the maximum, any Apprendi error would be harmless if the court sentenced a defendant to the upper term on the basis of a prior conviction, even if other aggravating factors were not proved beyond a reasonable doubt to a jury. Butler v. Curry, 528 F.3d 624, 649 (9th Cir. 2008).

    The state appellate court relied on the above-cited Supreme Court authority and People v. Black, 41 Cal. 4th 799 (2007), decided after Cunningham, to conclude that there was no sentencing

15

error. The appellate court noted that, under Black, one aggravating factor is sufficient to impose an upper term sentence and, because the trial court found three recidivism factors, one of which was his record of prior convictions for robbery and burglary, which does not require a finding by a jury, the imposition of the upper term did not infringe Petitioner's constitutional right to a jury trial.

The court of appeal's decision affirming Petitioner's sentence was not contrary to or an unreasonable application of Supreme Court authority. This claim for habeas relief is denied.

CONCLUSION

Based on the foregoing, the petition for a writ of habeas corpus is denied. The clerk shall enter judgment and close the file.

The Court finds that Petitioner has raised colorable constitutional claims about whether his Sixth Amendment rights were violated when the trial court dismissed Juror Number Three and failed to hold an evidentiary hearing on Juror Number Five's alleged misconduct in giving extrajudicial information to the jury. Therefore, a certificate of appealability is granted only on these two claims.

IT IS SO ORDERED.

Dated: 10/12/2010

CLAUDIA WILKEN
United States District Judge

16

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

PAUL CASANAS,

      Plaintiff,

v.

JAMES A YATES et al,

      Defendant.

Case Number: CV08-02991 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 12, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Paul Casanas F-08944
D1-12 Low
Pleasant Valley State Prison
P.O. Box 8504
Coalinga, CA 93210

Dated: October 12, 2010

Richard W. Wieking, Clerk
By: Nikki Riley, Deputy Clerk